**In the Matter of Karen A. ROBINSON, Debtor.**

**Bankruptcy No. 197–21544–575.**

United States Bankruptcy Court, E.D. New York.

Dec. 11, 1998.

Lance Roger Spodek, P.C., by Lance Roger Spodek, New York City, for debtor.

Stein & Sheidlower, L.L.P., by Eric S. Sheidlower, New York City, for First Union Mortgage Corporation, Federman & Phelan and Ocwen Federal Bank, FSB.

## AMENDED OPINION ON DEBTOR'S MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY*

LAURA TAYLOR SWAIN, Bankruptcy Judge.

Karen A. Robinson ("Debtor") seeks a finding of contempt against First Union Mortgage Corporation ("First Union") and Federman & Phelan, Esqs. ("F & P") for violation of the automatic stay and damages for such violation pursuant to section 362(h) of the Bankruptcy Code. 11 U.S.C. § 362(h). This motion stems from a March 12, 1998 filing of an application for, and entry of, judgment in connection with a foreclosure proceeding brought prepetition against Debtor. The Court heard argument at an April 9, 1998 hearing, and thereafter directed the parties to file supplemental briefs and, in proper evidentiary form, any additional evidence that they wished the Court to consider.

The Court has jurisdiction of this core proceeding[1] pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334(b) and the general Order of reference dated August 28, 1986 of the United States District Court for the Eastern District of New York. The following opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule

7052 of the Federal Rules of Bankruptcy Procedure.

### Background

Debtor filed a voluntary Chapter 7 petition on October 15, 1997, thereby invoking the protection of the automatic stay. 11 U.S.C. § 362(a). According to her petition, Debtor has a one-half interest in a "vacation home" located at 203 Keller Drive, Bartonsville, Pennsylvania. Debtor's bankruptcy petition schedules First Union as a secured creditor with respect to the property and identifies F & P as representing First Union.

At the time Debtor filed her bankruptcy petition, she and Victoria Sorrentino ("Sorrentino"), a co-mortgagor on the vacation home, were defendants in a foreclosure action that had been commenced by First Union on May 27, 1997. F & P, a law firm specializing in foreclosures, represents First Union and Ocwen Federal Bank, FSB ("Ocwen"), the current servicing agent for the mortgage, in the foreclosure proceedings.[2]

Prior to October 1997, Sorrentino filed a petition pursuant to Chapter 7 of the Bankruptcy Code. On October 10, 1997, an order modifying the automatic stay to permit foreclosure on the premises at 203 Keller Drive by "Ocwen Bank as Servicer for the Mortgagee of Record" was entered in Sorrentino's case, which was then pending in the United States Bankruptcy Court for the Middle District of Pennsylvania.

On October 15, 1997, Debtor filed her petition in this Court. Notices of the commencement of the case were sent to the creditors set forth in Debtor's creditor matrix. F & P and First Union appear on the creditor matrix, and the certificate of service in the Court's file indicates that the Court's noticing agent served both F & P and First Union[3] at their correct addresses by first

---

* This opinion was originally issued to the parties on September 28, 1998. There are no substantive changes.

1. See *Price v. Rochford*, 947 F.2d 829, 832 n. 1 (7th Cir.1991); *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir. 1986); *AP Industries, Inc. v. SN Phelps & Co. (In re AP Industries, Inc.)*, 117 B.R. 789, 802 (Bankr. S.D.N.Y.1990)

2. On June 27, 1997, First Union advised Debtor and Sorrentino that, commencing July 15, 1997, Ocwen would be the new servicing agent on the mortgage. By letter dated July 30, 1997, Ocwen confirmed this transfer of rights and advised them that Ocwen was the party to which all correspondence should be directed.

3. First Union's counsel contends that First Union has no interest in the mortgage and therefore was an improper party to receive notice. Coun-

class mail on October 18, 1997. The Court's file includes one proof of claim filed by another creditor in response to that mailing. Even though Ocwen had notified Debtor that it should be the addressee of correspondence relating to the mortgage on the property, Ocwen was not scheduled and did not receive notice of the bankruptcy before the events in question.

On March 12, 1998, in violation of the automatic stay triggered by Debtor's bankruptcy filing, Frank Federman, Esq. ("Federman") filed an application for the entry of judgment in First Union's foreclosure action against Debtor and Sorrentino. The Monroe County, Pennsylvania, Court of Common Pleas granted the application the same day (the "Judgment").

Federman, as attorney for First Union, mailed Debtor notice of entry of the Judgment. On March 20, 1998, Debtor contacted her attorney, Lance Roger Spodek, Esq. ("Spodek"). During the course of an approximately 35 minute telephone conversation, she expressed "concern." Spodek asserts that he assuaged her fears, told her to remain calm, and assured her that the entry of the Judgment would not lead to a wage garnishment. Later that day, Spodek reviewed the file and contacted F & P in hopes of reaching Federman so that the matter could be resolved without the need for a motion. Federman was unavailable and, after a 25 minute delay, Spodek reached another F & P attorney, Daniel Schmieg, Esq. ("Schmieg") and advised Schmieg of Debtor's bankruptcy. Schmieg responded that F & P had not received notice of Debtor's bankruptcy and informed Spodek that, upon confirmation of Debtor's filing, F & P would take appropriate action to vacate the Judgment.

Spodek then demanded to be compensated for his efforts in correcting the automatic stay violation. At the time he made the demand for compensation, Spodek had spent approximately one and one-half hours speaking with his client, reviewing the underlying file, and attempting to contact Federman in order to resolve this matter. Schmieg rejected the fee demand and informed Spodek that F & P would not compensate him.

After Schmieg's March 20, 1998 conversation with Spodek, F & P reviewed Debtor's foreclosure file and concluded that F & P had not received notice of debtor's bankruptcy filing from Spodek, the Court, First Union or any other source. F & P received confirmation of Debtor's filing on March 22, 1998. Spodek filed the instant motion on March 23, 1998 seeking damages from First Union and F & P (collectively, the "Respondents").[4] F & P, by request dated March 30, 1998 and filed with the Monroe County, Pennsylvania, Court of Common Pleas on April 1, 1998, vacated the Judgment.

Debtor's moving papers describe Spodek's conversation with Schmieg, including Schmieg's refusal to accede to Spodek's demand for compensation, and assert that Debtor should be awarded unspecified damages for "anticipated cost to rectify the public record and credit bureau records for this post petition entry of judgment and [an] award of counsel fees in an amount to be determined by the Court." The motion papers were devoid of any factual information as to the nature or even likelihood of the "anticipated cost" and included no information as to counsel fees actually incurred by

sel's affirmation describes First Union as only the former servicing agent of the mortgagee.

The Court rejects the assertion that First Union has no interest in the bankruptcy proceeding for the following reasons. First, the affidavit of Joseph L. Dlutowski, Senior Vice President of Ocwen, filed in this case asserts First Union's status as a secured creditor of the Debtor. Second, it appears that First Union had an obligation to notify Ocwen of its receipt of notice and should have sent any such notice by overnight mail to Ocwen. *See* Affidavit of Judy L. Swenson, Assistant Vice–President of First Union, ¶ 6. Finally, and of most importance, is the fact that

First Union is the plaintiff of record in the foreclosure proceeding. Indeed, First Union is the party in whose favor the judgment, the entry of which is at issue, was entered. The Court finds that First Union had some interest in the outcome of the foreclosure action.

4. Although Debtor's original motion papers sought damages from Federman individually, her Supplemental Papers request damages, one-half from each of F & P and First Union. The Court considers the claim against Federman to have been abandoned in favor of the claim against F & P. Debtor is not seeking damages from Ocwen.

Debtor. Upon questioning by the Court as to the legal and factual basis of the demand for the "anticipated cost," Spodek abandoned that element of the motion but asserted that Debtor was entitled to compensation for unspecified emotional injuries and counsel fees incurred in connection with the motion. Respondents' counsel asserted that no award of damages or fees would be appropriate because neither Respondent had actually received notice of commencement of the bankruptcy case. Following the lengthy argument, the Court entered an order permitting Debtor to file and serve supplemental papers, including evidence supporting any claimed damages, made provision for a response to any such papers, and took the matter under advisement.

### Discussion

■ The automatic stay invoked by the filing of a bankruptcy petition protects a debtor from creditors' attempts to collect prepetition debts. The automatic stay is designed to give debtors breathing space so that they may reorder their affairs. *See Kirk v. Shawmut Bank (In re Kirk)*, 199 B.R. 70, 71 (Bankr.N.D.Ga.1996). The protections afforded by the automatic stay are fundamental to the bankruptcy process. The automatic stay prohibits a person from, *inter alia;* commencing or continuing an action against a debtor that could have been or was commenced against the debtor before the filing of the petition; acting to obtain possession of or exercise control over property of the estate; and acting to collect, assess, or recover claims against the debtor that arose prepetition. 11 U.S.C. § 362(a)(1)(3) and (6).

■ A debtor injured by a willful violation of the automatic stay is entitled to actual damages, including attorneys' fees and, in appropriate circumstances, punitive damages. 11 U.S.C. § 362(h). If the party charged with violating the stay knows that the stay is in effect, any deliberate act taken in violation of the stay justifies an award of actual damages; an additional finding of maliciousness or bad faith on the part of the offending creditor is not necessary to support an award of actual damages but would warrant the further imposition of punitive damages pursuant to section 362(h). *See Crysen/Montenay Energy Co. v. Esselen Associates, Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1105 (2d Cir.1990).[5] In either

5. In *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the Supreme Court of the United States interpreted section 523(a)(6), which bars the discharge of a debt arising from a "willful and malicious injury by the debtor" to another entity or its property. The Court held that a willful injury requires the intent to cause the injury rather than the intent to perform the act that causes the injury. In light of the Court's holding in *Geiger*, a question arises as to whether the Supreme Court's interpretation of "willful ... injury" in section 523(a)(6) should be applied in construing the term "willful" as used in section 362(h). *See In re Hill*, 222 B.R. 119, 123 (Bankr.N.D.Ohio 1998). Although one could read *Geiger* to require a finding of actual intent to violate the automatic stay rather than application of the standard set forth by the Second Circuit in *Crysen*, this Court declines to adopt such an approach. *See Diviney v. Nationsbank of Texas, N.A., (In re Diviney)*, 225 B.R. 762, 774 (10th Cir. BAP 1998) (narrower standard of willfulness announced in *Geiger* should not be applied to section 362(h)). *Cf. In re Hill*, 222 B.R. 119 (Bankr.N.D.Ohio 1998) (suggesting that there are compelling reasons to interpret willful under section 362(h) differently than under section 523(a)(6)); *Isom v. Yoon (In re Isom)*, 1998 WL 173204 at *3 (Bankr.D.Minn. April 8, 1998) (interpretation of willful violation to be one

where the violator has knowledge of the petition and acts intentionally is consistent with *Geiger*).

As the Supreme Court has noted, " 'willful' ... is a 'word of many meanings,' and 'its construction [is] often ... influenced by its context.' " *Ratzlaf v. United States*, 510 U.S. 135, 141, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994) (quoting *Spies v. United States*, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943)). Willful may denote an intentional, knowing, or voluntary act undertaken without bad purpose. *See United States v. Murdock*, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933), *overruled on other grounds by Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *see also Cheek v. United States*, 498 U.S. 192, 208–09, 111 S.Ct. 604, 614, 112 L.Ed.2d 617 (1991) (Scalia, J., concurring) ("willfully" may refer to "consciousness of the act but not to consciousness that the act is unlawful" (citation omitted)); *United States v. Georgopoulos*, 149 F.3d 169 (2d Cir. 1998) (per curiam) (affirming jury instruction that willful violation of criminal statute required only deliberate and voluntary conduct), *petition for cert. filed*, 67 U.S.L.W. 3323 (October 22, 1998) (No. 98–720); *United States v. Rem*, 38 F.3d 634, 643 (2d Cir.1994) (willful conduct need not stem from evil motive or intent to

case, the Debtor must prove by a preponderance of the evidence that the violator had knowledge of the bankruptcy petition. *See In re Sharon*, 200 B.R. 181, 199 (Bankr. S.D.Ohio 1996). *Cf. Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

F & P, on behalf of First Union, deliberately requested and obtained entry of the Judgment in violation of the automatic stay. The only remaining question is whether the Respondents had knowledge of the stay. Although the Court's file in this matter includes a certificate indicating that notice of Debtor's bankruptcy filing was mailed to each Respondent when the case was commenced, Respondents deny that they received notice of Debtor's bankruptcy filing prior to entry of the Judgment.

*Respondents' Knowledge of the Automatic Stay*

In order to establish that Respondents had knowledge of the automatic stay, Debtor relies on the presumption of receipt. The depositing into the mail system of a properly addressed and stamped letter creates a rebuttable presumption of receipt by the party to whom the letter was addressed. *See Cablevision Systems Corp. v. Malandra (In re Malandra)*, 206 B.R. 667,

672–73 (Bankr.E.D.N.Y.1997) (quoting *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932)). A debtor may rely on the Court's certificate of mailing to invoke the presumption of receipt. *Id.* at 673.

The addresses of F & P and First Union are both set forth correctly on the certificate of mailing in the Court's file. The certificate of mailing indicates that F & P and First Union were served with notice of the filing by first class mail on October 18, 1997. The Court file in this case contains one proof of claim submitted by another creditor in response to that mailing.[6] This is additional evidence that the notices were, in fact, properly mailed. Accordingly, the presumption of receipt is applicable.

The party denying receipt may offer evidence to rebut the presumption. Courts have divided with respect to the quantum of evidence required to rebut the presumption and the evidentiary value, if any, of a rebutted presumption. *See id.; see also* 21 Wright & Graham *Federal Practice and Procedure* § 5122. Some courts hold that the "introduction of evidence which would support a finding of the non-existence of the presumed fact" is sufficient to rebut the presumption. *See Bratton v. Yoder Co. (In re*

---

defraud; the principal component is knowledge); *Crysen*, 902 F.2d at 1104. Although, as a matter of statutory construction, words used in one section of an act are presumed to have the same meaning in other sections of the act, the presumption may be overcome where it is reasonable to conclude that the words were employed with different intent. *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 608–09, 76 L.Ed. 1204 (1932); *see also Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). For example, where the subject matter, conditions, or breadth of the exercise of legislative power differ, the word should be construed contextually. *Atlantic Cleaners & Dyers*, 286 U.S. at 433, 52 S.Ct. at 608–09.

"Willful" in section 523(a)(6), and interpreted in *Geiger*, involves an exception to discharge. Exceptions to discharge are to be narrowly construed. *See Geiger*, —— U.S. at ——, 118 S.Ct. at 977 (quoting *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)). A broader construction of "willful" as used in that section would have been incompatible with that policy.

Section 362(h), on the other hand, should be liberally construed to bolster the protections of the automatic stay. *See A & J Auto Sales, Inc. v. United States (In re A & J Auto Sales, Inc.)*, 223 B.R. 839, 843 (D.N.H.1998). Section 362(h) provides a remedy to individual debtors harmed by a willful violation of the automatic stay. If section 362(h) were limited to violators who had specific intent to violate the stay, the deterrent effect of the damages remedy, and the relief it affords wronged debtors, would be compromised inappropriately.

In light of the fundamentally different purposes of section 362(h) (a statutory remedy to redress willful violations of the automatic stay) and section 523(a)(6) (an exception to discharge), the Court holds that *Geiger* does not, *sub silentio*, overrule *Crysen*.

6. Creditors were instructed not to file proofs of claim in this no-asset case because it appeared that there would be no distribution to creditors; if assets had subsequently been discovered, the creditors would have received a further notice and instructions as to filing proofs of claim. *See* Fed.R.Bankr.P.2002(e).

*Yoder Co.),* 758 F.2d 1114, 1118 (6th Cir. 1985) (internal quotation omitted). For these courts, a mere denial of receipt rebuts the presumption. *See Malandra,* 206 B.R. at 673.

The federal courts in New York, however, "hold quite uniformly that an affidavit of non-receipt is insufficient to rebut the presumption of receipt." *Id.; see also In re O.W. Hubbell & Sons, Inc.,* 180 B.R. 31, 35 (N.D.N.Y.1995) ("it appears that the bankruptcy court gave the proper weight, i.e. none, to the affidavit" denying receipt of notice). Many of these courts have noted the importance of first class mail to the bankruptcy process and recognize that the integrity of the process could be compromised if a creditor could defeat the presumption merely by denying receipt of a notice. *See Malandra,* 206 B.R. at 674 (quoting *In re R.H. Macy & Co.,* 161 B.R. 355, 360 (Bankr. S.D.N.Y.1993) (quotation omitted)).

 Although the mere denial of receipt does not rebut the presumption, testimony denying receipt in combination with evidence of standardized procedures for processing mail can be sufficient to rebut the presumption. *See In re Cassell,* 206 B.R. 853, 857 (Bankr.W.D.Va.1997); *Shawnee State Bank v. First National Bank of Olathe (In re Winders),* 201 B.R. 288, 290 (D.Kan. 1996); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dodd (In re Dodd),* 82 B.R. 924, 928–29 (N.D.Ill.1987). Where a presumption has been rebutted, the judge must weigh the evidence to determine whether the party did, in fact, receive notice. *See Nunley v. City of Los Angeles,* 52 F.3d 792, 796 (9th Cir.1995), *cert. denied,* —— U.S. ——, 118 S.Ct. 884, 139 L.Ed.2d 871 (1998); *Yoder,* 758 F.2d at 1119 n. 8. A court may draw an inference of receipt from the fact that the notices were properly mailed. *See Nunley,* 52 F.3d at 796 ("the factual question of receipt may be decided in favor of receipt by a fact finder who may choose to draw inferences of receipt from the evidence of mailing,

despite contrary evidence"); *Yoder,* 758 F.2d at 1119 n. 8 ("the facts giving rise to the presumption often give rise to an inference that may still be considered by the factfinder").

Respondents contend that their affidavits are more than mere denials of nonreceipt and are therefore sufficient evidence to overcome the presumption. The affidavits, in addition to denying receipt, describe Respondents' internal mail procedures for handling bankruptcy notices.

 The Court finds that Debtor has established, by a preponderance of the evidence, Respondents' knowledge of the bankruptcy. In making this finding, the Court relies on F & P's failure to rebut the presumption of receipt and the imputation of knowledge from attorney to client,[7] as well as inferences drawn from the evidence submitted, including the presence of a response (albeit from another party) to the same mailing. Each of these constitutes a sufficient independent ground for this conclusion.

F & P's handling of correspondence is described in Schmieg's Affidavit dated April 29, 1998. According to this affidavit, all mail and fax transmissions received by F & P are immediately reviewed and matched to existing foreclosure files. The client is notified by fax and first class mail. Schmieg avers that notice of Debtor's petition, from any source, is absent from F & P's foreclosure file.

The F & P affidavit merely asserts that all correspondence F & P receives is properly filed. There is no description of the standardized procedures, if any, that F & P uses to ensure the appropriate handling of the correspondence. A conclusory assertion that mail is properly filed upon its receipt amounts to no more than a denial of receipt. Accordingly, the Court finds this rather unilluminating affidavit to be insufficient to rebut the presumption of receipt. Thus, F & P shall be treated as having had knowledge of the bankruptcy.[8]

7. An attorney's knowledge of a bankruptcy filing may be imputed to the client. *See Bryan v. Land (In re Land),* 215 B.R. 398, 404 (8th Cir. BAP 1997); *In re Felberman,* 196 B.R. 678, 684–85 (Bankr.S.D.N.Y.1995).

8. Even if the F & P affidavit did rebut the presumption, the Court finds as a fact, for substantially the reasons set forth below in the Court's analysis of First Union's evidence, that F & P received the notice.

According to the affidavit of Judy L. Swenson, an Assistant Vice President of First Union, when First Union receives a bankruptcy notice, it assigns a mail code for "problem" loans to the notice and then sends the notice to a "Mail Team" designated to review problem loans. Here, the affidavit asserts, upon review of the file, the team member reviewing the loan would have observed that the loan had been transferred to Ocwen. He would have forwarded the bankruptcy notice to the "Acquisition Support Team." The Acquisition Support Team would have sent the notice to Ocwen by Federal Express. The description of these procedures, though terse, may be sufficient to support a finding of non-receipt thereby rebutting the presumption. *See Dodd*, 82 B.R. at 928–29.[9] The Court will assume for purposes of its analysis that this affidavit contains a sufficient description of standardized procedures to rebut the presumption of receipt.[10]

The Court, however, after considering the evidence and inferences that can be drawn therefrom, finds as a fact that First Union received notice. The Swenson affidavit does not expressly deny receipt.[11] Swenson describes the mail routing process as what would have happened if "the notice was indeed received." Nor does the Swenson affidavit state that First Union conducted any search for internal documentation of receipt, or whether First Union had even searched for a Federal Express tracking number. *Cf. Dodd*, 82 B.R. at 928–29. Moreover, Swenson, unlike the witnesses in *Dodd*, does not state that she has either personal knowledge or supervisory responsibility with respect to First Union's mail handling procedure.

First Union's evidence fails to provide certain critical information that would establish that the procedures are sufficiently standardized to ensure proper processing for the incoming mail. There is no affidavit from any person directly involved in the mail handling procedures. The Swenson affidavit does not provide information about how many people would need to properly handle the notices until the notices were filed or logged. Nor does the affidavit set forth the procedural safeguards, if any, that First Union utilizes to ensure that the notices are appropriately handled. No information is provided as to the reliability of these internal procedures. The Swenson affidavit establishes only that the bankruptcy notice did not reach the proper file or computer log. The affidavit, which merely asserts that mail is passed from team to team before being recorded, is essentially a general denial of receipt.

With respect to both Respondents, after careful consideration of all of the evidence presented and inferences that can be drawn therefrom, the Court finds that both First Union and F & P received notice and subsequently lost or misrouted the notices. It is highly unlikely that two properly addressed notices, one sent to Pennsylvania and the other to North Carolina, were both lost in the mail. *Cf. In re Borchert*, 143 B.R. 917, 920 (Bankr.D.N.D.1992).

Respondents further contend that, even assuming that they received the notice, Debtor has failed to demonstrate how their presumed receipt rises to the level of actual knowledge that is required for sanctions under section 362(h). Respondents cite *In re*

---

9. However, several courts have held, on similar facts, that the presumption of receipt had not been rebutted. *See Malandra*, 206 B.R. at 670 (affidavits provided by the creditor recounting its law firm's mail processing procedure were insufficient to rebut the presumption); *In re Hobbs*, 141 B.R. 466, 469 (Bankr.N.D.Ga.1992) (finding the evidence insufficient to establish a standardized procedure for processing mail that would rebut the presumption); *see also CUNA Mutual Insurance Group v. Williams (In re Williams)*, 185 B.R. 598, 599 (9th Cir. BAP 1995) (evidence of creditor's business routine "is a variant on the statement of non-receipt"); *A.N. Deringer, Inc. v. United States*, 1996 WL 467736 at *7 (C.I.T.1996) (plaintiff failed to rebut the presumption and

establish nonreceipt despite testimony of internal mail handling procedures). *Compare Legille v. Dann*, 544 F.2d 1 (D.C.Cir.1976).

10. Because the Court finds, in any event, that First Union received the notice, this assumption is not determinative of the outcome here.

11. Indeed, the only express denial of First Union's receipt is in Dlutowski's affidavit. Nothing in the record suggests that Dlutowski, an officer of *Ocwen*, has personal knowledge of whether *First Union* received the notice and misplaced it. Accordingly, the Court does not credit this denial of First Union's receipt.

*Wrobel,* 197 B.R. 289 (Bankr.N.D.Ill.1996), as a case in which the debtor failed to prove that the violator "had knowledge" of the bankruptcy petition. In *Wrobel,* however, the alleged violator was never listed as a creditor in the debtor's Chapter 13 petition and had not received notice from the court or the debtor regarding the proceedings. *Wrobel,* 197 B.R. at 292–93.[12]

■ In the instant case, the Court has already determined that Respondents received notice of the bankruptcy petition. The receipt of the notice is sufficient for Respondents to be deemed to have had knowledge of the bankruptcy proceeding. *See In re Bennett,* 135 B.R. 72, 76 (Bankr. S.D.Ohio 1992) (holding that the creditor willfully violated the automatic stay where a notice vacating the dismissal and reinstating the automatic stay had been properly mailed); *see also Borchert,* 143 B.R. at 920 (insurance companies "have failed to overcome the presumption of receipt and must therefore be regarded as having had notice and knowledge of" the bankruptcy); *Utah State Credit Union v. Skinner (In re Skinner),* 90 B.R. 470 (D.Utah 1988) (creditor had constructive knowledge of mail that remained unopened for six days and thus knew of the automatic stay despite the fact that no employee had yet read the mail), *aff'd sub nom. Mountain America Credit Union v. Skinner,* 917 F.2d 444 (10th Cir.1990). Once a creditor receives notice, it is its responsibility to make sure that its employees properly attend to the notice. Its employees' failure to follow procedures does not preclude a finding that the creditor willfully violated the automatic stay.[13] Accordingly, the Court finds that F & P and First Union may be liable for damages and attorneys' fees pursuant to section 362(h).

*Damages*

Having concluded that Respondents willfully violated the automatic stay, the Court must determine to what extent Debtor may recover damages and attorneys' fees as a result of the stay violation.

*Damages other than attorneys' fees*

Debtor seeks damages of $1,500 (exclusive of attorneys' fees) for harm she allegedly suffered as a result of entry of the Judgment. Debtor's purported injuries include economic and emotional elements. According to Debtor's motion papers, Respondents' entry of a postpetition judgment will "prevent the Debtor from reestablishing future credit" and has caused her to incur an obligation to Spodek. The motion papers assert that Debtor was "concerned," and the supplemental papers assert that Debtor was "upset," by the notice of filing of the Judgment.

■ The Court finds Debtor's allegations of present and future pecuniary loss to be unsupported by the evidence. Debtor has not submitted evidence that First Union or Ocwen did or would have notified the credit agencies of a postpetition judgment or that her credit rating would otherwise have been impaired by the entry of the Judgment. Indeed, it appears that it is the initial default on the mortgage followed by the bankruptcy filing, rather than the entry of the Judgment, that would impair Debtor's ability to reestablish credit. To the extent that the mere existence of the Judgment may have impaired the value of the property or limited the time Debtor could use her vacation home without making mortgage payments, the va-

**12.** In *Wrobel,* the court held that the alleged violator's action fell within an exception to the automatic stay; the knowledge determination was an alternate holding. *See Wrobel,* 197 B.R. at 294 n. 5.

**13.** In *Skinner,* 90 B.R. at 480, the district court upheld the bankruptcy court's finding of contempt but reversed an award of damages pursuant to section 362(h). The district court held that the violation was not willful because there was insufficient evidence to demonstrate that the creditor or its employees "deliberately and intentionally" violated the automatic stay, *id.* at 475, notwithstanding the fact that the creditor had knowledge of the existence of the automatic stay. The 10th Circuit did not review this aspect of the district court's decision. *Skinner,* 917 F.2d at 446–47. This Court respectfully disagrees with this aspect of the district court's holding. A corporate creditor or law firm that has institutional knowledge of the automatic stay and which violates the automatic stay cannot avoid sanctions pursuant to section 362(h) merely because the persons who carried out the violation were unaware of the existence of the stay.

catur of the Judgment, which Schmieg undertook to accomplish before this motion was brought, eliminated any such harm.[14]

Furthermore, the Court finds no evidence in the record to support Debtor's claim of emotional harm. Rather than providing an affidavit describing Debtor's distress or any consequences of such distress, Debtor's papers proffer only unsworn and generalized assertions that Debtor was "concerned," "upset," and needed reassurances to calm her fears. In the absence of admissible evidence of Debtor's emotional upset and harm flowing therefrom, the Court finds no basis for awarding damages for emotional injuries.

Moreover, this is not a case in which the facts suggest that severe emotional upset should have been triggered by notice of entry of a postpetition judgment relating to a mortgage. In Debtor's bankruptcy schedules, she valued her one-half interest in the property at $20,000 and acknowledged liens on the property in excess of $90,000. In addition, in her statement of intention dated September 18, 1997 and filed together with her petition, Debtor represented that she intended to surrender the property. Debtor's allegation that she was traumatized by the mere entry of the Judgment against a vacation home that she intended to surrender and was, in any event, destined to lose strains credulity.

*Attorneys' fees*

A court may award attorneys' fees pursuant to section 362(h) even if the debtor has suffered no other compensable harm. *See In re Sumpter,* 171 B.R. 835, 845 (Bankr. N.D.Ill.1994); *Bank of Boston v. Baker (In re Baker),* 140 B.R. 88, 90 (D.Vt.1992) (attorneys' fees are encompassed within the larger sphere of actual damages). In this case, Debtor seeks an award of $4,092.50 in attorneys' fees incurred in connection with the stay violation. Spodek, whose E.D.N.Y. L.B.R. 2016(b) statement filed in this case reflects that he received a flat fee of $710 prior to filing the petition, asserts that the value of his time is $200 an hour (the billing rate that he normally uses for Chapter 11 matters) and that time spent by his "assis-

tant in clerical items" is billed at $75 per hour.

Of the claimed $4,092.50 in fees, $320 reflects time spent speaking with Debtor, reviewing the case file, and advising F & P of the bankruptcy. An additional $172.50 represents time spent by Spodek's assistant in locating his office file on this case (0.4 hours) and filing the motion (1.9 hours). The log annexed to Spodek's supplemental papers indicates that he spent 2.7 hours (billed at $540) drafting the motion on the very same day he placed the call to F & P. The balance of the requested fees was incurred in connection with the oral argument and Spodek's review and preparation of opposition and supplemental papers on this motion.

Attorneys' fees awarded pursuant to section 362(h) must be reasonable and necessary. The policy of section 362(h), to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a "cottage industry" built around satellite fee litigation. *See Putnam v. Rymes Heating Oils, Inc. (In re Putnam),* 167 B.R. 737, 741 (Bankr.D.N.H.1994). Attorneys are not at liberty to incur large legal fees simply because those fees will be shifted to their adversaries pursuant to section 362(h). *See Price v. Pediatric Academic Assoc., Inc.,* 175 B.R. 219, 221 (S.D.Ohio 1994), *on remand, In re Price,* 179 B.R. 70 (Bankr.S.D.Ohio 1995).

Reasonable and necessary fees do not include unnecessary litigation costs. Several courts have greatly reduced awards of attorneys' fees in situations where unnecessary costs were incurred or under circumstances similar to the those presented by the instant motion. *See In re McCrosson,* 1997 WL 47625 (Bankr.E.D.Pa. Feb. 3, 1997) (awarding $500 in fees rather than the requested $1,000); *Price,* 179 B.R. at 73 (limiting fee award to $75 where legal fees and judicial time far exceeded the $13 in actual damages); *Putnam,* 167 B.R. at 741–42 (reducing attorneys' fees by over 50% where, *inter alia,* the fees bore no relation to the amount of actual damages suffered and

---

**14.** Respondents contend that Debtor is in fact in a better position after the vacatur of the Judg- ment because, under state law, a new foreclosure proceeding must now be commenced.

where Debtor failed to attempt to settle the matter before filing the motion); *In re Newell,* 117 B.R. 323, 326 (Bankr.S.D.Ohio 1990) (awarding $150 and requiring notification of opposing counsel of the stay violation before permitting an award of attorneys' fees); *McLaughlin v. Fireman's Trust Mortgage Corp. (In re McLaughlin),* 96 B.R. 554, 556 (Bankr.E.D.Pa.1989) (reducing fees by over 50%); *In re Houchens,* 85 B.R. 152, 155 (Bankr.N.D.Fla.1988) (awarding $50 but imposing Rule 9011 sanctions in the amount of $350 against the debtors and their attorney for bringing the contempt motion).

■ In appropriate circumstances, a court may determine that a section 362(h) motion was wasteful and limit the attorney's compensation award to the amount that he would have earned had he handled the matter efficiently. Such circumstances are those where "the injury caused and damages incurred, other than attorneys' fees, only amount to the cost of appearing in court to litigate the contempt motion; the burden of requiring the debtor's attorney to notify the creditor of the violations is insignificant; and no bad faith on the part of the defendant exists." *Price,* 175 B.R. at 222.

■ The factors identified by the district court in *Price* are all present in the instant case and merit a material reduction from the fees requested. As set forth above, Debtor has demonstrated no harm other than the costs of litigation. Indeed, F & P having undertaken in response to the initial phone call to vacate the judgment, this motion was essentially in the nature of a fee application.

Finally, there is the issue of good faith. Debtor focuses on Schmieg's alleged comment that "post petition judgments happen all the time" and are "no big deal." Debtor urges a finding of contempt to secure future compliance with the automatic stay. She further contends that, if creditors can violate the stay and not be required to pay compensation when a debtor's attorney calls the violation to their attention, they will have no incentive to be diligent.

Schmieg's comments were perhaps flippant; they do not, however, evidence bad faith. Schmieg's comment apparently reflects the reality that, as Schmieg informed Spodek, a large number of the foreclosure proceedings in which F & P is involved end up in bankruptcy. Indeed, F & P's notice vacating the Judgment is a form captioned "Praecipe," which includes a checklist of five possible grounds for vacating a judgment or terminating a proceeding initiated by the firm. One of five options on the form provides for vacatur of a judgment inadvertently entered in violation of the automatic stay. Nothing in the record suggests that F & P has a practice of continuing foreclosure proceedings in blatant violation of the stay or of correcting such violations only when notified by opposing counsel.

F & P advised Spodek during the initial conversation that F & P would vacate the Judgment. F & P's notice vacating the Judgment is dated March 30, 1998, ten days after F & P was advised of the violation and eight days after Spodek provided F & P with a copy of the mailing matrix in this case. F & P's brief delay in undoing the prior violation did not cause the debtor any harm, pecuniary or otherwise. *Compare Putnam,* 167 B.R. at 741 (two day delay before returning a propane tank used by Debtor for heating, hot water, and cooking a violation of the stay). Here, Debtor suffered no inconvenience or pecuniary loss, and the delay, though not insignificant, does not lead the Court to conclude that F & P acted in bad faith.

■ Notwithstanding the existence of the factors set forth in *Price,* the Court declines to limit the fee award to the approximately one and one-half hours Spodek billed to correcting the stay violation. During the initial conversation, Spodek permissibly requested compensation for the time he had spent correcting the stay violation. F & P's refusal to compensate him prompted the filing of the motion. Where there is a willful violation, the violator must compensate a debtor's counsel for his reasonable response to that violation. To deny fees incurred litigating the motion would inappropriately saddle a debtor or debtor's attorney with such expenses; violators would be able to deny compensation to a debtor's counsel knowing that

his costs to litigate the motion would greatly exceed his reimbursement.

The Court finds a fee award of $2,280 to be reasonable under the circumstances. Spodek's request for compensation for his time spent in responding to Debtor's initial telephone call and notifying F & P of the bankruptcy filing ($320) and preparing the initial motion papers ($540) is reasonable. The Court will award half of the claimed time spent in oral argument ($220); the oral argument on this motion was extended unnecessarily by confusion arising from Spodek's later-abandoned contention that Debtor was entitled to prospective "damages" and therefore a reduction in claimed fees is appropriate. The Court will reduce the claimed compensation for time spent responding to the opposition papers and filing the supplemental submission. Compensation for the supplemental submission is appropriate only in so far as it relates to the issue of the presumption of receipt; the Court will not award additional compensation for those aspects of the supplemental submission that were, or should have been, addressed in the original motion papers. The Court finds that six hours of time is reasonable for researching and drafting the section of the supplemental submission addressing the presumption of receipt ($1200).

### Conclusion

The Court finds that Respondents willfully violated the automatic stay and are therefore liable for attorneys' fees. Under the circumstances of this case, the Court finds it appropriate to limit Spodek's attorneys fee award to $2,280.[15] This award is without prejudice to any rights of F & P or First Union to indemnity or contribution.

An order consistent with this opinion was entered on December 2, 1998.

---

15. Debtor's motion can be read to seek sanctions and a finding of contempt independent of section 362(h) as well as Rule 9011 sanctions. These issues have not, however, been adequately

briefed by Debtor, and for substantially the reasons set forth above in limiting the award of compensation, the Court declines to impose further sanctions.