In re Sharon J. HEDETNEIMI, Debtor.

No. 02–7037–3F3.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 15, 2003.

Wendell Finner, Jacksonville, FL, for Debtor.

R. Raye Curry, Jacksonville, FL, for Prosperity Bank.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon Debtor's Motion to Hold Prosperity Bank in Contempt for Stay Violation (the "Motion for Contempt").[1] Debtor seeks actual

---

1. At the hearing Debtor's attorney informed the Court that the distinction between a mo- tion for contempt and a motion for sanctions is not necessarily a distinction without a dif-

damages, costs and attorney's fees, and punitive damages. The Court conducted a hearing on March 24, 2003 and elected to take the matter under advisement. Upon the testimonial and documentary evidence and the briefs of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Debtor, who is represented pro bono through Central Florida Legal Services, filed a Chapter 13 bankruptcy petition on July 26, 2002. Debtor owes Prosperity Bank ("Prosperity") $859.37 as the result of an overdrawn account. Debtor listed Prosperity as a creditor on her bankruptcy schedules. The creditor's matrix contains Prosperity's correct mailing address. On July 29, 2002 the Court entered Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, and Deadlines (the "Notice of Commencement"). On July 30, 2002 the Court mailed the Notice of Commencement to all creditors listed on the matrix.

In November, 2002 Debtor went to Prosperity to cash a check made payable to her, drawn on a third party's Prosperity account. Upon review of Debtor's account, the bank teller, Sherrie Raymond ("Raymond"), discovered that Debtor's account was overdrawn.[2] Raymond asked Debtor if she was aware she had an overdrawn account. Debtor indicated that she was aware her account was overdrawn but she was a debtor in a pending bankruptcy case. Raymond testified there was no notation on Debtor's account that she had filed a bankruptcy case. Raymond referred Debtor to Prosperity's branch manager, Mark Anastacio ("Anastacio"). Debtor testified that several bank customers witnessed the exchange, causing her embarrassment and humiliation. Debtor testified that Anastacio questioned her regarding her overdrawn account. Debtor reiterated that she was a debtor in a pending bankruptcy case and had proof thereof in her car. Anastacio requested that Debtor retrieve the documents evidencing the pending bankruptcy from her car. Debtor retrieved a letter from the Chapter 13 Trustee's office bearing her case number. After photocopying the letter and speaking on the telephone with another Prosperity employee, Anastacio authorized the cashing of Debtor's check. Debtor went to the end of the line at the teller window to cash the check. Debtor was given the full amount of the funds for the check made payable to her. When Debtor arrived home, there was a message on her answering machine from Anastacio informing her that Prosperity needed further verification of the bankruptcy filing. Debtor did not return the phone call.

Several weeks later Debtor returned to the same Prosperity branch to cash a

ference. *See, e.g. Jove Eng'g, Inc. v. Internal Revenue Service,* 92 F.3d 1539, 1551–1554 (11th Cir.1996) (noting that 11 U.S.C. § 105 grants bankruptcy courts independent statutory contempt powers to remedy automatic stay violations involving corporate and individual debtors while 11 U.S.C. § 362(h) applies only to individual debtors). However, in the instant case Debtor's attorney did not point out, and the Court does not discern, a difference between the two. The Court will therefore treat the Motion for Contempt as a motion for sanctions.

2. Prosperity's explanation at the hearing as to why it accessed Debtor's account in order to cash a check from a third party was wholly unsatisfactory. In its memorandum Prosperity contends it accessed Debtor's account to verify her identification and to obtain "the customer's account number to write the account number on the check [it] was cashing". Prosperity could have verified Debtor's identification through other means. Additionally, assuming the third party payor has sufficient funds in his or her account to satisfy the check, the Court does not understand the necessity of accessing the payee's account.

check made payable to her, drawn on a third party's Prosperity account. Debtor testified that Raymond was again the teller with whom she dealt. The sequence of events was similar to that which occurred several weeks earlier. Debtor presented the check to Raymond, who then reviewed Debtor's account, asking her whether she was aware that her account was overdrawn. Debtor indicated that she was a debtor in a pending bankruptcy case. Debtor testified that several bank customers witnessed this exchange, again causing her embarrassment and humiliation. Because the account upon which the check was written had insufficient funds to satisfy the check, Prosperity declined to negotiate the check. Debtor later returned to Prosperity and cashed the check without incident.

Heather Hunter ("Hunter"), the senior vice president and director of deposit operations for Prosperity, testified that Prosperity deals with bankruptcy cases in the following manner: upon receipt of the notice of commencement of a bankruptcy case, Prosperity forwards the notice to its bookkeeping department, which then inputs the information onto the customer's account in Prosperity's computer system such that anyone accessing the customer's account will observe that the customer has filed a bankruptcy case. Hunter acknowledged that Prosperity does not maintain a log of incoming mail.

Debtor testified that she spent $5.00 on gas to attend the hearing.

### CONCLUSIONS OF LAW

■ Section 362(a)(6) of the Bankruptcy Code stays "any act to collect, assess or recover a claim against the debtor that arose before the commencement" of a bankruptcy case. Section 362(h) of the Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages". In order to recover damages under § 362(h) a debtor must show that there was a willful violation of the automatic stay and that he or she was injured by the violation. *In re Craine*, 206 B.R. 594, 597 (Bankr.M.D.Fla.1997). A creditor's conduct is willful if the creditor: 1) knew the automatic stay was invoked and 2) intended the actions which violated the stay. *Jove Eng'g*, 92 F.3d at 1555.

Prosperity does not assert that its actions did not violate the automatic stay. Instead Prosperity argues that its actions were not willful. Alternatively, Prosperity asserts that Debtor did not suffer an injury of the sort encompassed by 11 U.S.C. § 362(h).

■ Prosperity contends that the absence of a notation on Debtor's account that she had filed bankruptcy indicates that Prosperity did not receive notice of Debtor's bankruptcy filing and that its actions cannot therefore be considered willful. There is a rebuttable presumption that a properly mailed item is received by the addressee. *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932). Although a mere denial of receipt is insufficient to rebut the presumption of receipt, *In re Hobbs*, 141 B.R. 466, 468 (Bankr.N.D.Ga.1992), "[d]irect testimony of non-receipt, particularly in combination with evidence that standardized procedures are used in processing claims, [is] sufficient to support a finding that the mailing was not received, and thereby rebut the presumption accorded a proper mailing." *In re Dodd*, 82 B.R. 924, 928 (N.D.Ill.1987) citing *In re Yoder*, 758 F.2d 1114, 1118 (6th Cir.1985). However, not every standardized procedure is sufficient to rebut the presumption of receipt.

The Court finds that Prosperity received the Notice of Commencement of Debtor's bankruptcy case. Prosperity is listed as a creditor in the case and its correct mailing address is listed on the creditor's matrix. The undisputed mailing of the Notice of Commencement established a rebuttable presumption that Prosperity received it. The Court finds Hunter's description of Prosperity's handling of notices of commencement to be little more than a denial of receipt and therefore insufficient to overcome the presumption of receipt. Because Prosperity had actual knowledge of Debtor's bankruptcy case when Debtor attempted to cash the first check and intended the actions which violated the stay, the Court finds that Prosperity willfully violated the automatic stay. Additionally, even if the Court had found that Prosperity did not receive the Notice of Commencement, there can be no doubt that it had notice of Debtor's bankruptcy when she attempted to cash the second check. Accordingly, Prosperity's actions when Debtor attempted to cash the second check were also a willful violation of the automatic stay.

The Court turns to the issue of whether Debtor suffered an injury for which she can recover actual damages pursuant to § 362(h). Debtor contends that she suffered humiliation and embarrassment before an audience of other bank customers. Prosperity asserts that § 362(h) does not contemplate actual damages for emotional distress. A debtor's emotional distress must be more than fleeting, inconsequential, and medically insignificant to support an award of actual damages pursuant to § 362(h). *Aiello v. Providian Fin. Corp.,* 257 B.R. 245, 250 (N.D.Ill.2000) *aff'd,* 239 F.3d 876 (7th Cir.

2001). In the absence of conduct of such an egregious or extreme nature that emotional distress would be expected to occur, a debtor must present some medical or other corroborating evidence showing that she suffered more than fleeting and inconsequential distress, embarrassment, humiliation, and annoyance. *Aiello v. Providian Fin. Corp.,* 231 B.R. 684, 691 (Bankr.N.D.Ill.1999). The Court finds that Prosperity's conduct was neither egregious nor extreme and would not ordinarily be expected to cause emotional distress. Additionally, the Court finds Debtor's testimony that she suffered humiliation and embarrassment, absent medical or other corroborating evidence, insufficient to establish a compensable claim for emotional distress. Accordingly, the Court will not award damages for Debtor's emotional distress.

The Court turns to the issue of a debtor's entitlement, in the absence of other compensatory damages, to costs and attorney's fees pursuant to § 362(h). Prosperity contends that a debtor who has not suffered any compensatory damages as a result of a technical violation of the automatic stay cannot be awarded attorney's fees since they are awarded only to embellish actual damages.[3] Debtor asserts that § 362(h)'s use of "including" to refer to costs and attorney's fees indicates Congress' intent to include costs and attorney's fees as a subset of actual damages.

The Court holds that it may award attorney's fees pursuant to § 362(h) even if a debtor has suffered no other compensable harm. *See In re Robinson,* 228 B.R. 75, 85 (Bankr.E.D.N.Y.1998); *In re Rijos,* 260 B.R. 330, 340 *rev'd on other grounds,* 263 B.R. 382 (1st Cir. BAP 2001);

---

**3.** Prosperity does not address a debtor's entitlement to costs pursuant to § 362(h) in the absence of other compensatory damages.

Presumably, Prosperity would argue that costs are also awarded only to embellish actual damages.

*In re Skeen,* 248 B.R. 312, 322 (Bankr. E.D.Tenn.2000); *Singley v. Am. Gen. Fin. (In re Singley),* 233 B.R. 170 (Bankr. S.D.Ga.1999). However, attorney's fees awarded pursuant to § 362(h) must be reasonable and necessary. *Robinson,* 228 B.R. at 85. "The policy of section 362(h), to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of court's reluctance to foster a 'cottage industry' built around satellite fee litigation." *Id.* citing *Putnam v. Rymes Heating Oils, Inc. (In re Putnam),* 167 B.R. 737, 741 (Bankr.D.N.H.1994). Because Debtor is represented pro bono through Central Florida Legal Services and is thus not responsible for payment of attorney's fees, she is not entitled to an award thereof. Additionally, the Court holds that it may award costs pursuant to § 362(h) even if a debtor has suffered no other compensable harm. The Court will award Debtor $5.00 for the gas expense she incurred to attend the hearing on the Motion for Sanctions.

 Debtor also requests an award of punitive damages. The imposition of punitive damages for a violation of the automatic stay is appropriate when the violator acts in an "egregious intentional manner". *In re Rivers,* 160 B.R. 391, 394 (Bankr.M.D.Fla.1993). Because it finds that Prosperity's conduct was not egregious, the Court will not impose punitive damages.

### CONCLUSION

Because it had knowledge of Debtor's bankruptcy case and intended the actions which violated the automatic stay, Prosperity willfully violated the automatic stay. However, Debtor did not establish a compensable claim for emotional distress. Although the Court may award attorney's fees and costs in the absence of other compensatory damages, Debtor is repre-sented on a pro bono basis and is therefore not entitled to an award of attorney's fees. However, Debtor is entitled to an award of $5.00 for the gas expense to attend the hearing on the Motion for Sanctions. Finally, because Prosperity's conduct was not egregious, Debtor is not entitled to an award of punitive damages. The Court will enter a separate Order consistent with these Findings of Fact and Conclusions of Law.