**In re Elton ZAJNI, Debtor.**

No. 08–2895–3F3.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 10, 2008.

Edward P. Jackson, Attorney for Debtor.

Alan Henderson, Attorney for Red Door Realty, Inc.

Richard R. Thames, Attorney for Jacksonville Sheriff's Office.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon Debtor's Motion for Sanctions for Violation of the Automatic Stay. Debtor seeks the imposition of sanctions against Red Door Realty Group, Inc. ("Red Door"). The Court conducted a hearing on the matter on June 19, 2008 at which the parties stipulated to the facts as outlined in the introduction contained in Red Door's Memorandum of Law in Opposition to Debtor's Motion for Sanctions. In lieu of oral argument, the Court directed the parties to submit additional legal memoranda in support of their respective arguments. By Order dated July 2, 2008, the Court noted that it was in substantial agreement with Debtor's memorandum, finding that Red Door willfully violated the automatic stay. The Court conducted an evidentiary hearing on damages on August 6, 2008 at which the Court found that Debtor was entitled to attorney's fees in the amount of $3,555.00. The following Findings of Fact and Conclusions of Law supplement the Court's oral rulings.

## FINDINGS OF FACT

On December 13, 2007 Red Door obtained a Final Judgment against Debtor in the County Court of Duval County, Florida (the "County Court"), in the amount of $21,086.07. On April 9, 2008 the County Court issued a Writ of Execution commanding each sheriff of the state of Florida to levy on the property of [Debtor] subject to execution, in the sum of $21,086.07. On May 22, 2008 a sheriff from the Jacksonville Sheriff's Office ("JSO"), pursuant to levy instructions and the Writ of Execution, levied and seized a 2002 Cadillac Escalade (the "Vehicle") owned by Debtor. The estimated value of the Vehicle according to Debtor's Schedule B is $12,200.00.

On May 22, 2008 after JSO levied on the Writ of Execution, Debtor filed a Chapter 13 bankruptcy petition. Debtor then demanded that Red Door release the Vehicle. On May 27, 2008 counsel for Red Door advised Debtor's counsel that: 1) Red Door would not authorize the release of the Vehicle; 2) under federal and Florida law Debtor lost any and all ownership interest in the Vehicle when JSO seized it

pursuant to a valid Writ of Execution and levy instructions; and 3) JSO was not required to turn the Vehicle over to Debtor because the Vehicle was not property of the estate under section 541 of the Bankruptcy Code. The Motion for Sanctions followed.

## CONCLUSIONS OF LAW

■ Section 541 of the Bankruptcy Code provides that the bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case wherever located and by whomever held." 11 U.S.C. § 541(a)(1). The question of whether a debtor's interest is property of the estate is a federal question, but the "nature and existence of [a] debtor's right to property is determined by looking at state law." *Southtrust Bank of Alabama v. Thomas (In re Thomas)*, 883 F.2d 991, 995 (11th Cir.1989).

■ Debtor argues that at the time he filed his bankruptcy petition, the Vehicle was property of the estate. Red Door argues that when JSO seized the Vehicle pursuant to a valid writ of execution, Debtor by operation of law lost all ownership interest in the Vehicle. The issue before the Court is whether the pre-petition execution of the Vehicle transferred ownership of the Vehicle by operation of law immediately upon execution, thereby removing the Vehicle from Debtor's bankruptcy estate.

Red Door relies on the Eleventh Circuit's decision in *In re Kalter*, 292 F.3d 1350 (11th Cir.2002). *Kalter* dealt with the pre-petition repossession of a vehicle by a secured creditor. In that case the court noted that when property rights of a motor vehicle are at issue, Florida has codified in the Certificate of Title statute specific legislation regarding ownership, title, and transfer. *Kalter* pointed out that § 319.22 [1] of the Florida Statutes generally provides that a certificate of title is required in order to obtain marketable title to sell a vehicle. The statute provides an exception (embodied in § 319.28(1)) [2] for a vehicle which has been transferred by operation of law, permitting the party pos-

---

1. Fla. Stat. 319.22(1) provides:
   Except as provided in ss 319.21 and 319.28, a person acquiring a motor vehicle or mobile home from the owner thereof, whether or not the owner is a licensed dealer, shall not acquire marketable title to the motor vehicle or mobile home until he or she has had issued to him or her a certificate of title to the motor vehicle or mobile home; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate for such motor vehicle or mobile home for a valuable consideration. Except as otherwise provided herein, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle or mobile home sold, disposed of, mortgaged, or encumbered, unless evidenced by a certificate of title duly issued to that person, in accordance with the provisions of this chapter.

2. Fla. Stat. 319.28(1)(a) provides:

In the event of the transfer of ownership of a motor vehicle or mobile home by operation of law as upon inheritance, devise or bequest, order in bankruptcy, insolvency, replevin, attachment, execution, or other judicial sale or whenever the engine of a motor vehicle is replaced by another engine or whenever a motor vehicle is sold to satisfy storage or repair charges or repossession is had upon default in performance of the terms of a security agreement, chattel mortgage, conditional sales contract, trust receipt, or other like agreement, and upon the surrender of the prior certificate of title or, when that is not possible, presentation of satisfactory proof to the department of ownership and right of possession to such motor vehicle or mobile home, and upon payment of the fee prescribed by law and presentation of an application for certificate of title, the department may issue to the applicant a certificate of title thereto.

sessing the vehicle to obtain a certificate of title from the Florida Department of Highway Safety and Motor Vehicles (the "Florida DMV"). Section 319.28(2)(b)[3] provides that in the case of repossession of a motor vehicle, an affidavit by the repossessing party stating that the vehicle was repossessed upon a default in the terms of the security agreement "shall be considered satisfactory proof of ownership and right of possession." The *Kalter* court found that such language was an express recognition by the statute that ownership transfers upon repossession. *Id.* at 1358. Citing to TL–23(I) of the DMV Procedures Manual[4], the court noted that the DMV has interpreted § 319.28 as "providing 'for the transfer of ownership of a motor vehicle by operation of law, to include repossession of a motor vehicle for non-fulfillment of a contract,' as long as the secured creditor has possession of the vehicle." *Id.* n. 8. The court held that the debtor's ownership interest in the vehicle transferred by operation of law and was therefore not property of the debtor's bankruptcy estate. *Id.* at 1360.

Red Door argues that *Kalter* controls the case at bar because execution, like repossession, is one of the events set forth in § 319.28 which transfers ownership of a motor vehicle by operation of law. Upon a close reading of the statute, the Court concludes that the phrase "or other judicial sale" modifies "execution". The Court reads the statute to transfer ownership upon an execution sale, not upon the execution itself. Unlike Section TL–23 of the DMV Procedures Manual, Section TL–22, titled Application for Certificate of Title for a Motor Vehicle Purchased from a Sheriff's Sale, does not interpret § 319.28(1)(a) to provide for transfer by operation of law of ownership of a vehicle which was been seized by a sheriff pursuant to a writ of execution. Section II of TL–22 sets forth the documents, which must be submitted to the tax collector's office to obtain a certificate of title "after the property has been seized and sold at a public sale." Among the required items is the original bill of sale from the sheriff to the purchaser showing the selling price and a description of the vehicle.

Moreover, the Court finds that the ability to exempt an asset seized by the sheriff under a writ of execution makes it clear that the asset is still property of the estate until the sale. Section 222.061 of the Florida Statutes sets forth the method by which a debtor can exempt personal property which has been levied by a sheriff. If a debtor does not own an asset, he cannot claim it as exempt. There is no equivalent procedure for a repossessed vehicle.

█ The Court finds that the reasoning set forth in *Kalter* does not apply to execution. The Court finds that Red Door's pre-petition execution of the Vehicle did not transfer ownership by operation of law. The Court finds that at the time Debtor filed his bankruptcy case, the Vehicle was property of the estate. The Court finds that Red Door's refusal to return the Vehicle upon Debtor's request violated the automatic stay. The Court turns to the issue of damages.

---

**3.** Fla. Stat. 319.28(2)(b) provides in pertinent part:

In case of repossession of a motor vehicle or mobile home pursuant to the terms of a security agreement or similar instrument, an affidavit by the party to whom possession has passed stating that the vehicle or mobile home was repossessed upon default in the terms of the security agreement or other instrument shall be considered satisfactory proof of ownership and right of possession.

**4.** TL–23 is titled Application for Certificate of Title or Certificate of Repossession following Replevin and Repossession for Non–Fulfillment of Contract.

Section 362(k)(1) of the Bankruptcy Code provides that "[e]xcept as provided in paragraph (2)[5], an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages". In order to recover damages under [§ 362(k)] a debtor must show that there was a willful violation of the automatic stay and that he or she was injured by the violation. *In re Hedetneimi*, 297 B.R. 837, 841 (Bankr. M.D.Fla.2003).[6] A creditor's conduct in violating the automatic stay is willful if the creditor: 1) knew that the automatic stay was invoked and 2) intended the actions, which violated the stay. *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996). The Court finds that Red Door willfully violated the automatic stay.

The only damages, which Debtor seeks is an award of attorney's fees in the amount of $3,555.00. Red Door asserts that Debtor is not entitled to an award of attorney's fees because it took good faith efforts to comply with the case law, there was no court order directing Red Door or JSO to release the Vehicle, and Debtor took no action to recover the property. While § 362(k)(2) provides a "good faith" exception to actions taken in violation of the automatic stay, it refers to a good faith belief that § 362(h)(1) applies to the debtor. Section 362(h)(1) is wholly inapplicable to the instant case. Even if it were not, however, § 362(k)(2) limits the recovery of damages for a "good faith" violation of the automatic stay to actual damages. Attorney's fees are actual damages. The Court finds that Debtor is entitled to an award of attorney's fees to put him in the position he would have been in if the stay has been recognized. The Court finds that an award of $3,555.00 for attorney's fees is reasonable. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

### ORDER GRANTING MOTION FOR SANCTIONS

This case came before the Court upon Debtor's Motion for Sanctions. Upon Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

1. Debtor's Motion for Sanctions is granted.

2. Red Door Realty Group, Inc. shall pay the sum of $3,555.00 to Debtor's attorney within forty five days of the date of this Order.

3. In the event the above sum is not paid within the time specified above, upon a motion by debtor the Court will enter a judgment upon which execution will issue.

---

5. Section 362(k)(2) does not apply to the instant matter.

6. Although *Hedetneimi* referred to § 362(h) of the Bankruptcy Code, former section 362(h) of the Bankruptcy Code was amended by BAPCPA and is now section 362(k).