In re Thomas S. HEIDKAMP, Debtor.

Thomas S. Heidkamp, Plaintiff,

v.

Fifth Third Bank (Florida), Defendant.

Bankruptcy No. 9:04–bk–22830–ALP.
Adversary No. 9:05–ap–00170–ALP.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Aug. 26, 2005.

Richard J. Hollander, Miller & Hollander, Naples, FL, for Debtor.

### FINDINGS OF FACTS, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

In the above-captioned adversary proceeding, Thomas S. Heidkamp (the Debtor) filed a one-count Complaint seeking Damages and Injunctive Relief against Fifth Third Bank (Fifth Third). The Debtor in the Complaint contends that Fifth Third willfully violated the automatic stay, entitling the Debtor to a monetary award of actual damages suffered as a result of the violation pursuant to 11 U.S.C. § 362(h) of the Bankruptcy Code.

In due course Fifth Third filed its Answer to the Complaint and asserted as its defense that the Debtor has pledged as collateral for a loan the receivables due to him for the performance of his duties as a panel trustee. In addition Fifth Third contends that certain letters sent by Fifth Third were not a violation of the automatic stay and, therefore, it was not a willful violation.

The relevant facts established at the final evidentiary hearing can be briefly summarized as follows:

At the time relevant, the Debtor was a member of the Official Panel of Trustees, appointed by the Office of the United States Trustee for the Fort Myers Division of the Middle District of Florida. The Debtor is a practicing attorney and operated his law office as a Professional Association, Thomas S. Heidkamp, P.A. (the P.A.) Fifth Third is a national bank.

Pre-petition, Fifth Third granted a loan to the P.A., secured by all assets and personal property of the P.A, including accounts receivable. Although there is no document in evidence in this record establishing the original loan granted by Fifth Third, it appears from the proof of claim filed that such a loan was, in fact granted and was guaranteed by the Debtor individually. (Debtor's Exhibit No. 1). Fifth Third perfected the security interest claimed in the accounts receivable of the P.A. pursuant to the applicable provisions of the Uniform Commercial Code as adopted in this state by Florida Statute Section 679.1011 et seq. (Debtor's Exhibit No. 1). There is no evidence in the record showing that the Debtor granted a security interest in his personal property or receivables.

On June 25, 2004, after the P.A. defaulted on the loan, the parties executed a document entitled Agreement (the Agreement). (Defendant's Exhibit No. 1). The Agreement was a workout agreement covering both the loan to the P.A. and various credit card debts owed by the Debtor and/or the P.A. The Agreement was executed by Fifth Third on the one side, and both the Debtor and the P.A. on the other, with the Debtor signing both individually and as president of the P.A. The Agreement in pertinent part provides that the Debtor is granting as collateral for the balance on the loan owed by the P.A. to Fifth Third the accounts receivables owed to the P.A. "for services rendered while serving as a bankruptcy trustee." (Defendant's Exhibit No. 1). Of course, there were no receivables due to the P.A. as trustee for the simple reason that the P.A. was never a member of the Panel of Trustees appointed by the Office of the United States Trustee for the Middle District of Florida.

The Agreement states that "Heidkamp P.A. has filed applications for payment of fees and expenses for services rendered while serving as a bankruptcy trustee...." (Defendant's Exhibit No. 1, at 1). The Agreement then states that "Heidkamp and Heidkamp P.A. agree that they will direct the United States Trustee's of-

fice and any other interested party requiring notice to issue and transmit" any payments c/o Fifth Third. *Id.* The Agreement states similar terms for any fees due in cases where successor trustees have been appointed; i.e., "there are additional bankruptcy actions in which Heidkamp P.A. served as trustee where trustee's final reports (TFRs) have not been filed," and both the Debtor and the P.A. will direct that these fees be paid c/o Fifth Third. *Id.*, at 2,3.

Much confusion is generated in this case due to the manner in which the Debtor operated his law office. The Debtor (1) served as a Chapter 7 panel trustee, (2) practiced law as an attorney, and (3) operated the P.A. as its president. In the course of his duties as a panel trustee, the Debtor had occasion to employ his P.A., as counsel for the estate. Under this arrangement, the Debtor generated receivables in two different capacities; the Debtor as an individual received money as a trustee, and the P.A. received money as counsel to the trustee.

It appears during the relevant time the Debtor was involved in dissolution of marriage proceedings in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, in the case styled *In re the Marriage of Thomas S. Heidkamp and Belinda K. Heidcamp,* Case No. 03–DR–6396–C. In connection with this proceeding, the Debtor was examined under oath, during which the Debtor testified that "his money" is going to Fifth Third. However, the Debtor did not indicate whether those moneys were subject to the lien of Fifth Third:

> Q: Of any of the funds that you have coning to you, is there going to be an allocation to Fifth Third Bank pursuant to your security and forbearance agreement?
>
> A: They get all my money.

> Q: So all the money you are being questioned about, the trustees fees, that's all going to go to the Fifth Third Bank?
>
> A: Yeah. They get—get the checks and then they deposit my half in the bank account.

(Defendant's Exhibit No. 3, pg. 14 line 24).

On February 10, 2005, this Court entered an Order Granting Fifth Third Bank's Motion for Partial Lift of Automatic Stay (Doc. No. 46) (the Stay Order). The effect of the Stay Order was that "the bankruptcy stay in [the Debtor's Chapter 13 case] is lifted to allow Fifth Third Bank to exercise its creditor's rights as to monies payable to or due and owing to Thomas S. Heidkamp, P.A., specifically in accordance with [the Agreement]".

March 21, 2005 Melville Brinson, III (Brinson), on behalf of Fifth Third, sent a letter to various successor panel trustees appointed to cases previously handled by the Debtor. (Debtor's Exhibit No. 2). In his letters, Brinson informed the trustees of the Debtor's bankruptcy filing, the Agreement, and the Stay Order and stated that the Office of the United States Trustee has agreed to Fifth Third's request to submit, according to the terms of the Agreement, "any fees which become payable to Mr. Heidkamp's P.A. for his services rendered as a trustee." *Id.* The letter asks that the recipients also comply with Fifth Third's request.

Robert Tardif, Jr. (Tardiff), one of the successor trustees who received the letter, sought clarification from Brinson as to exactly what moneys Fifth Third was asserting as a secured claim. In an email sent on March 23, 2005, Tardiff stated that the Debtor had filed Applications for compensation in cases that he took over as trustee; in "all of the cases, however, he filed the applications individually for a portion

of the trustee fee. He did not file any applications in the files for any award of attorney's fees that would presumably have been due to the P.A." (Debtor's Exhibit No. 3). Tardiff then asked if Fifth Third claimed that moneys owed to the Debtor were actually owed to the P.A., and therefore to Fifth Third, to which Brinson answered, yes.

On March 24, 3005, Louis Amato (Amato), then attorney for the Debtor, responded to Fifth Third's letter and its response to Tardiff. In an email to Brinson, Amato asserted that the letter and the demand contained therein was a violation of the automatic stay. (Debtor's Exhibit No. 3). Amato informed Mr. Brinson that "Heidkamp, P.A. was not appointed a Chapter 7 trustee in any case, but the P.A. may be entitled to attorney's fees in some of the cases [the Debtor] administered as trustee. All trustee fees are payable to [the Debtor], individually." *Id.* Mr. Brinson disagreed and declined to revoke the letters; on March 30, 2005, the Debtor commenced this action.

*Fifth Third Violated the Automatic Stay*

█ An individual may recover damages, including attorneys' fees and costs, suffered due to a willful violation of the automatic stay. Section 362(h). The Debtor is an individual. The automatic stay, in broad terms, prevents any action "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 362(a)(3). If the fees at issue are receivables of the P.A., there is no action against property of the estate. If the fees are receivables of the Debtor, they are property of the estate, and the letters constitute an attempt to obtain possession of or exercise control over them.

The Agreement and Fifth Third's actions under it and the Stay Order proceed on the mistaken assumption that the P.A. served as a trustee. However, only the Debtor, an individual, was a panel trustee. While a corporation or partnership may qualify for appointment as a panel trustee under the minimum qualification requirements, "[n]o professional corporation, partnership, or similar entity organized for the practice of law or accounting shall be eligible to serve on the panel." 28 C.F.R. § 58.3. In order to serve as a panel trustee, one must be a member of the panel of trustees established by the office of the United States Trustee. Section 701. The P.A. was never appointed a member of the panel of trustees. Therefore, the P.A. was never entitled to payment for services rendered as a bankruptcy trustee.

Fifth Third argues that there was no violation of the automatic stay due to this Court's prior entry of the Stay Order. However, the Stay Order did nothing more than allow Fifth Third to exercise its rights as to monies due or owing to the P.A. The Stay Order specified that "[e]ntities owing money to [the P.A.] may distribute money in accordance with the workout agreement." The pledge contained in the Agreement was for receivables of the P.A. Payments for services as trustee are receivables of the Debtor individually. Since the P.A. cannot collect fees as a trustee, the Stay Order is inapplicable to the payments sought by Fifth Third. Fifth Third's letters have clearly violated the automatic stay.

█ Fifth Third argues that the Debtor is judicially estopped from asserting the argument that the fees owed for services rendered as trustee are owed to the Debtor and not the P.A. Judicial estoppel is an equitable doctrine "designed 'to prevent the perversion of the judicial process.' " *Parker v. Wendy's Int'l, Inc.,* 365 F.3d 1268, 1271 (11th Cir.2004), quoting *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir.2002). In considering,

within its discretion, the application of the rule, a court considers two factors. *Parker,* 365 F.3d at 1271. " 'First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.' " *Id.,* quoting *Burnes,* 291 F.3d at 1285.

■ Fifth Third claims that the Debtor's testimony under oath in the state court hearing in his divorce case was inconsistent with his position taken in this case. Upon a review of the transcript, the Court finds that the statements alleged as inconsistent are generally unclear. The Debtor testified that his money is going to Fifth Third, but does not state that the fees are subject to Fifth Third's lien on the receivables of the P.A. Within the context of the hearing, the Debtor's statements do not establish the requisite scheme to "make a mockery of the judicial system." *See, In re Lee,* 247 B.R. 311, 314 (Bankr. M.D.Fla.2000) (declining to apply judicial estoppel to prior deposition testimony because "there is no place in the deposition in which [the party] flatly and clearly states" the contrary position).

*Fifth Third's Violation of the Automatic Stay was Willful*

■ Fifth Third argues that if the automatic stay was violated, the violation was not willful. Fifth Third claims it was seeking enforcement of a valid order of this Court, and argues that there is no violation of the automatic stay by simply presenting an order to the trustees. A violation of the automatic stay is willful when the party: (1) knows of the existence of the automatic stay and (2) intends to commit the acts which violate the stay. *Jove Eng'g, Inc. v. Internal Revenue Service,* 92 F.3d 1539, 1555 (11th Cir.1996). The intent with which Fifth Third carried

out its actions is irrelevant to the issue of whether the violation was willful. *See, AOL v. Uhrig (In re Uhrig),* 306 B.R. 687, 694 n. 4 (Bankr.M.D.Fla.2004).

Here both requirements are clearly met. First, Fifth Third's awareness of the existence of the stay is demonstrated by its effort to obtain an order for partial relief from the stay. Second, while the communications with the Office of the United States Trustee and the letters to the various successor panel trustees were sent under the belief that Fifth Third was entitled to the fees under the Agreement and this Court's Stay Order, this belief was nevertheless unfounded.

The correspondence between Mr. Amato, attorney for the Debtor, Mr. Brinson, attorney for Fifth Third, clearly demonstrate that Fifth Third was aware of the Debtor's contention that Fifth Third violated the automatic stay—the Debtor's prior attorney specifically stated that the letters were in violation of the automatic stay. (Debtor's Exhibit 3). The potential violation was also acknowledged by Tardiff, one of the successor trustees, in his correspondence with Fifth Third. *Id.* (discussing the concern that trustee fees were owed to the Debtor, not the P.A., and stating "I do not believe that I would disburse any money without possibly having the Judge expressly advise me that his previous Order on Relief includes the trustee's fees that are not directly payable to the P.A."). Rather than seeking to clarify its position by seeking an order from the Court, Fifth Third continued to assert its position.

*Debtor's Damages*

■ An individual's remedy for a willful violation of the automatic stay includes costs and attorneys' fees, to the extent reasonable and necessary. Section 362(h); *In re Hedetneimi,* 297 B.R. 837, 842 (Bankr.M.D.Fla.2003). The Debtor has no alleged any actual damages, nor is there

any evidence in the record to support such a finding. However, in attempting to stop all attempts directed at fees owed to the Debtor as his commission for his services as trustee, and in prosecuting this action, the Debtor has incurred $70.00 in costs, and $8262.50 in attorneys' fees. (Debtor's Exhibit Nos. 4, 5). This Court is satisfied that the award sought is reasonable and justified, and should be allowed.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Debtor's Complaint for Damages for Willful Violation of the Automatic Stay and for Injunctive Relief be, and the same is hereby, granted.

A separate final judgment shall be entered in accordance with the foregoing.