In re Gregory Joseph **MILLER** and Tammy Lynn Miller, Debtors.

No. 10–21288REF.

United States Bankruptcy Court, E.D. Pennsylvania.

March 1, 2011.

426

Thomas L. Lightner, Lightner Law Offices, P.C., Allentown, PA, for Gregory Joseph Miller, Tammy Lynn Miller.

Demetrios Tsarouhis, Keifer & Tsarouhis, LLP, Allentown, PA, for Ettinger & Associates, LLC.

## STATEMENT SUPPORTING ORDER DATED MARCH 1, 2011, DENYING SANCTIONS MOTION

RICHARD E. FEHLING, Bankruptcy Judge.

### I. INTRODUCTION

This case is about a motion for sanctions for violating the automatic stay. Respon-

dent creditor violated the automatic stay in May 2010 by sending invoices to Debtors. Respondent sent three further monthly invoices, in June, July, and August, 2010. Section 362(k)(1) of the Bankruptcy Code, 11 U.S.C. § 362(k)(1),[1] creates strict liability for certain of such action: If a creditor knows about a debtor's bankruptcy, if the creditor takes action stayed by Section 362, and if the debtor suffers some injury, the debtor "shall recover actual damages, including costs and attorneys' fees."

Debtors suffered no injury upon receiving the invoices in 2010. They received the invoices for four months before telling their counsel in August 2010. When they finally told counsel about the invoices, moreover, they and their counsel did nothing for over five months, waiting until January 2011 to file their motion for sanctions. Without being asked or told to do so, the creditor ceased sending the invoices—the August invoice was the last one sent. Yet, the creditor had violated the automatic stay. Finally, Debtors do not aver in their motion, and Debtors did not testify at the hearing about, any injury whatsoever.

A condition precedent to Debtors' request for actual damages and attorneys' fees is that Debtors suffered some injury. They did not. Furthermore, Debtors' precipitous filing of the motion for sanctions, and the resulting attorneys' fees, were neither reasonable nor necessary and I will neither condone nor reward it. I will deny Debtors' sanctions motion.

### II. PROCEDURAL HISTORY

Some time before April 2010, Debtors were parties to certain state court landlord-tenant litigation in which they were the tenants. Arising out of that litigation

---

1. The citation form in this Opinion/Statement/Order complies with Judge Richard A. Posner's suggested citation form in the appendix to his 1986 law review article. Richard A. Posner, Goodbye to the Bluebook, 53 U. Chi. L. Rev. 1343 Appendix (Fall, 1986).

grew a dispute about Debtors' non-payment of attorneys' fees owed to their pre-bankruptcy counsel, Neil Ettinger, Esquire, and his law firm, Ettinger & Associates, LLC (together, "Ettinger").[2] In the litigation to collect the attorneys' fee, Ettinger filed a complaint against Debtors. When Debtors failed to answer the complaint, Ettinger filed the so-called ten-day default notice [3] on April 22, 2010. The 10-day letter warned Debtors that default judgment would be entered against them after ten days if they did nothing.

Debtors initiated this Chapter 7 bankruptcy by filing their petition on April 30, 2010, staying the collection litigation, particularly the entry of default judgment. Debtors' case proceeded unremarkably until late August 2010, shortly before the August 30, 2010, deadline for objections to dischargeability. On August 20, 2010, Ettinger filed an adversary proceeding against Debtors' seeking a determination of non-dischargeability of the debt owed as attorneys' fees for the landlord-tenant litigation. The adversary proceeding has advanced to the pre-trial conference stage, which will be held next week, on March 9, 2011.

Nothing more happened in the main case until January 19, 2011, when Debtors's counsel, Thomas L. Lightner, Esquire, filed Debtors' Motion for Contempt for Breach of the Automatic Stay with Respect to Neil Ettinger and Ettinger & Associates, LLC. Mr. Lightner then filed, later in the same day, Debtors' Amended Motion for Contempt, for Breach of the

Automatic Stay with Respect to Neil Ettinger and Ettinger & Associates, LLC.[4] I will refer to the original sanctions motion and the amended sanctions motion together as the "Sanctions Motion."

Ettinger answered the Sanctions Motion by filing the Response to Debtor's [sic] Amended Motion for Contempt for Violation of the Automatic Stay, on February 14, 2011. Ettinger revised the original answer and filed the Amended Response to Debtor's [sic] Amended Motion for Contempt for Violation of the Automatic Stay on February 15, 2011. Although Ettinger did not expressly request that the original response be withdrawn, a colloquy in open court made it quite clear that counsel intended the amended response to supercede and replace the original response completely. The amended response includes three changes:

First, the original Ettinger response includes an admission of liability in Paragraph 5 that Ettinger decided to retract by revising it in the amended response. Original paragraph 5 reads, in part: "Admitted that Ettinger & Associates, LLC attempted to collect a debt which was in violation of the automatic stay." Amended paragraph 5 reads, in part: "Admitted that *if* Ettinger & Associates, LLC attempted to collect a debt which was in violation of the automatic stay *it would be liable.*" Emphasis added to show the changed language.

Second, the original response reads, in part: "This was a clearly ministerial over-

---

2. Because I will deny the Sanctions Motion at issue in this dispute, I need not reach the *issue whether Mr. Ettinger is personally responsible* with his law firm, Ettinger & Associates, LLC, for the violation of the automatic stay.

3. Pa. Rule Civil Proc. 237.1.

4. When Debtors filed the sanctions motion, they neglected to attach the exhibits, which they filed separately. They also incorrectly used the caption of the dischargeability adversary proceeding between the parties. Debtors filed the amended sanctions motion eliminating the adversary proceeding caption and attaching the exhibits. Nothing more was changed.

sight on the part of Ettinger & Associates, LLC billing department." Amended paragraph 5, reads, in part: *"If such a billing was sent,* this was a clearly ministerial oversight on the part of Ettinger & Associates, LLC billing department *and Debtors have not shown any actual damages."* Emphasis added to show the changed language.

Third, the WHEREFORE clause in the original response reads: "WHEREFORE, respondents respectfully request [sic] to enter an order *finding that Ettinger & Associates, LLC solely is in contempt of the court and orders such relief as the court may direct including order payment of attorneys' fees of approximately $75.00."* The WHEREFORE clause in the amended response reads, "WHERE-FORE, Respondent respectfully requests that this Honorable Court enter an order *denying the Motion for Violation of the Automatic Stay* [sic]." Emphasis added to show the changed language.

Mr. Lightner accepted the amendments and the silent withdrawal of the admissions in original paragraph 5. He did not advance any argument that they continue to constitute an admission.

I held the hearing on the Sanctions Motion dispute on February 17, 2011. At the close of hearing, I directed counsel to prepare and file uncomplicated letter briefs relating to Ettinger's argument that a "plethora" of courts have refused to award sanctions pursuant to Section 362(k)(1) because they want to prevent the development of a "cottage industry" of such sanction claims. I also asked the parties to provide me with any decisions that considered a long (five-months in this case) delay

in which counsel did nothing when told by his clients that the stay had been violated. At no time did I ask counsel for either a recap of the facts or the creation of a whole new set of facts.

Although both parties filed so-called "letter briefs" late in the afternoon on February 25, 2010, neither party complied with my directive for briefing. Simple letter briefs are intended, as I informed counsel, to identify relevant cases and legal argument and to present it simply and concisely—in one or two lines for each case. The first page and a half of Ettinger's letter brief deals with facts, most of which either were not in the record of the February 17, 2011 hearing or are augmented. Debtors' submission fails to refer to even a single case. For all four of its pages, Debtors' brief presents brand new facts that were not touched on in the hearing. I reject Debtors' "brief" and I disregard it entirely. I have considered some of the cases cited by Ettinger. This matter is now ripe for determination.[5]

### III. FACTUAL BACKGROUND

Mr. Lightner sought repeatedly to bring into this dispute the unfriendly history between Debtors and Ettinger, their former counsel. That history may or may not be germane to the pending adversary proceeding, but it is not relevant in this matter. My findings of facts salient to this matter follow:

1. Ettinger had issued a 10–day notice of default letter in the attorneys' fee collection litigation against Debtors on April 22, 2010. This fact is not disputed.

**5.** Following the February 17, 2011 hearing in this dispute, each of the parties has continued the attempts to have this Court impose sanctions on the adverse parties. In the adversary proceeding between the parties discussed

above, Debtors filed their Motion for Sanctions Pursuant to Rule 9011 of the Bankruptcy Code on February 23, 2011, and Ettinger filed a Motion To Compel Discovery and for Sanctions on February 24, 2011.

2. Debtors filed this Chapter 7 case on April 30, 2010. This fact is not disputed.

3. On April 30, 2010, Mr. Lightner's paralegal/assistant successfully faxed notice of the bankruptcy to Ettinger, addressed personally to Mr. Ettinger. The testimony of Ms. Capone, a paralegal/assistant in Mr. Lightner's office, was clear, concise, straightforward, and totally credible. Mr. Ettinger repeatedly expressed his lack of knowledge about the conduct of his law firm and whether he or his office did or did not receive the April 30 fax. He also acknowledged that he had not reviewed any documents in his office in preparation for the hearing in this matter. His lack of interest in the operations of his office in this matter was disheartening and damaged his credibility.

4. Mr. Lightner's paralegal/assistant filed a Suggestion of Bankruptcy with the state trial court before whom the attorneys' fee collection case was pending. The testimony of Ms. Capone, a paralegal/assistant in Mr. Lightner's office, was clear, concise, straightforward, and totally credible.

5. Ettinger did not enter default judgment against Debtors. This fact is not disputed.

6. At no time after April 30, 2010, when Debtors filed their bankruptcy, did Ettinger subject them to any dunning or collection efforts, whether by telephone, email, or letter, other than through the four invoices described below. This fact is not disputed.

7. Ettinger issued an invoice for his fees to Debtors in early May 2010. This fact is disputed. The testimony of Debtor, Gregory Joseph Miller, was not strong, but stands uncontradicted. The factual underpinnings advanced by Debtors stretch the bounds of my credulity, but are largely uncontradicted. Mr. Ettinger repeatedly expressed his lack of knowledge about the conduct of his law firm, including whether his office did or did not mail the May invoice. He also acknowledged that he had not reviewed any documents in his office in preparation for the hearing in this matter. His lack of interest in the operations of his office in this matter was disheartening and damaged his credibility.

8. Debtors did not inform Mr. Lightner about receiving the May invoice. This fact is not disputed.

9. Debtors presented no evidence whatsoever that they were scared, inconvenienced, threatened, emotionally traumatized, or otherwise adversely affected by the May invoice.

10. Debtors regarded the May invoice as simply a further effort by Ettinger to be paid and they threw the May invoice from Ettinger on to a pile of papers to deal with later, possibly, with Mr. Lightner. This fact is not disputed.

11. Ettinger issued an invoice for his fees to Debtors in early June 2010. This fact is disputed. The testimony of Debtor, Gregory Joseph Miller, was not strong, but stands uncontradicted. The factual underpinnings advanced by Debtors stretch the bounds of my credulity, but are largely uncontradicted. Mr. Ettinger repeatedly expressed his lack of knowledge about the conduct of his law firm, including whether his office did or did not mail the June invoice. He also acknowledged that he had not reviewed any documents in his office in preparation for the hearing in this matter. His lack of interest in the operations of his office in this matter was disheartening and damaged his credibility.

12. Debtors did not inform Mr. Lightner about receiving the June invoice. This fact is not disputed.

13. Debtors presented no evidence whatsoever that they were scared, incon-

venienced, threatened, emotionally traumatized, or otherwise adversely affected by the June invoice.

14. Ettinger issued an invoice for his fees to Debtors in early July 2010. This fact is disputed. The testimony of Debtor, Gregory Joseph Miller, was not strong, but stands uncontradicted. The factual underpinnings advanced by Debtors stretch the bounds of my credulity, but are largely uncontradicted. Mr. Ettinger repeatedly expressed his lack of knowledge about the conduct of his law firm, including whether his office did or did not mail the July invoice. He also acknowledged that he had not reviewed any documents in his office in preparation for the hearing in this matter. His lack of interest in the operations of his office in this matter was disheartening and damaged his credibility.

15. Debtors did not inform Mr. Lightner about receiving the July invoice. This fact is not disputed.

16. Debtors presented no evidence whatsoever that they were scared, inconvenienced, threatened, emotionally traumatized, or otherwise adversely affected by the July invoice.

17. Ettinger issued an invoice for his fees to Debtors in early August 2010. This fact is disputed. The testimony of Debtor, Gregory Joseph Miller, was not strong, but stands uncontradicted. The factual underpinnings advanced by Debtors stretch the bounds of my credulity, but are largely uncontradicted. Mr. Ettinger repeatedly expressed his lack of knowledge about the conduct of his law firm, including whether his office did or did not mail the August invoice. He also acknowledged that he had not reviewed any documents in his office in preparation for the

hearing in this matter. His lack of interest in the operations of his office in this matter was disheartening and damaged his credibility.

18. Debtors presented no evidence whatsoever that they were scared, inconvenienced, threatened, emotionally traumatized, or otherwise adversely affected by the August invoice.

19. For the first time, Debtors acted upon receiving an Ettinger invoice because they noticed that the August invoice from Ettinger included accruing interest. This fact is not disputed.

20. Debtors informed Mr. Lightner about the invoices some time in mid August. This fact is not disputed.

21. Mr. Lightner had no time entry in August 2010, relating to any communication to him by Debtors about the invoices. This fact is not disputed.

22. Mr. Lightner did not call, email, fax, write, or otherwise communicate with Ettinger in August 2010 when he was told about the invoices. This fact is not disputed.

23. Ettinger sent no invoices to Debtors after August 2010. This fact is not disputed.

24. According to Mr. Lightner's time records, Mr. Lightner did not call, email, fax, write, or otherwise communicate with Ettinger at any time before filing the Sanctions Motion on January 19, 2011.[6] This fact is not disputed.

25. Ettinger stopped sending the invoices to Debtors without Mr. Lightner taking any action whatsoever. This fact is not disputed.

26. Without Mr. Lightner doing anything at any time, Ettinger made no ef-

6. This is based only on the Sanctions Motion dispute. Mr. Lightner may have communicated with Ettinger or its counsel in the course of the adversary proceeding between them.

forts whatsoever after early August 2010 to collect the debt owed by Debtors. This fact is not disputed.

27. According to Mr. Lightner's time records, he had no expenditures of time relating to the invoices until January 18, 2011, the day before he filed the Sanctions Motion. This fact is not disputed.

28. According to Mr. Lightner's time records, the only communication between Mr. Lightner and Ettinger or its counsel about the 2010 Ettinger invoices to Debtors was not initiated by Mr. Lightner, but was his receipt of a letter on February 14, 2011, from Ettinger's counsel, in response to the Sanctions Motion. This fact is not disputed.

29. According to Mr. Lightner's time records, he had no communication with Ettinger or its counsel at any time, from the start of this case in April 2010, through the date of the hearing on February 17, 2011, other than receiving the February 14, 2011 letter responding to the Sanctions Motion.[7] This fact is not disputed.

30. According to Mr. Lightner's time records, Mr. Lightner had no communication with Debtors about the invoices or about the Sanctions Motion until the day before the hearing on the Sanctions Motion, February 16, 2011. This fact is not disputed.

31. Mr. Lightner expended the following attorney time (at $225/hour) relating to the matter of the Ettinger invoices:

A. Review file—1.3 hours ($337.50)

B. Prepare Sanctions Motion—0.45 hours ($168.75)

C. Meetings/telephone calls with clients—1.63 hours ($366.75)

D. Review Sanctions Motion responses—0.66 hours ($148.50)

E. Attend Sanctions Motion hearing— 3.0 hours ($675.00)

TOTAL TIME—7.04 hours ($1,584)

This fact is not disputed.

32. Mr. Lightner's staff expended the following paralegal time (at $80/hour) relating to the matter of the Ettinger invoices:

A. Prepare notice, order, certif/service—1.0 hour ($80.00) [8]

B. Prepare billing statement—1.0 hours ($80.00)

C. Attend hearing on Sanctions Motion—3.0 hours (240.00)

TOTAL TIME—5.0 hours ($400.00)

This fact is not disputed (except for my determination that entry A for the paralegal's time is invalid, as discussed in footnote 8, herein).

33. Mr. Lightner's office expended 12.04 professional's time ($1,984.00) relating to the matter of the Ettinger invoices.[9] This fact is not disputed (except for my determinations that entry A for the paralegal's time is invalid and the arithmetic error, as discussed in both footnotes 7 & 8, herein).

34. According to the MapQuest round trip distance of 100.66 miles from Debtors' home to Reading and the IRS mileage

7. See n. 6, above.

8. According to the docket in this case, nothing fitting this description was filed on or near February 16, 2011, the date that it is charged to Debtors' account in the billing statement. To the extent that the date is incorrect and this entry is intended to refer to the original filing of the Sanctions Motion on January 19, 2011, I note that the docket re-

flects that no proposed order was filed by Debtors until I asked for one on February 18, 2011. This time entry is rejected.

9. Mr. Lightner's billing statement erroneously attributes 13.4 hours to this matter, with $2,290 in resulting fees. These figures are incorrect as a matter of arithmetic.

reimbursement rate of $0.51, both of which I accept, the cost of travel for Debtor, Mr. Miller, to the Reading Courthouse was $51.00. This fact is not disputed.

## IV. DISCUSSION. INCLUDING CONCLUSIONS OF LAW

Resolution of this matter requires my review and interpretation of the express language of Section 362(k)(1) of the United States Bankruptcy Code, 11 U.S.C. § 362(k)(1), and practicality, common sense, and good policy. Section 362(k)(1) provides, in relevant part:

> (k)(1) [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).

### A. Debtors Failed To Establish The Elements Required for an Award of Sanctions.

■ Section 362(k)(1) is "remarkably simple" and requires the imposition of sanctions on a party violating the automatic stay upon three provisions:

> First, the offending party must have violated the automatic stay.
> Second, the violation of the stay must have been willful.
> Finally, the willful violation must have caused Debtors some injury.

*Wingard v. Altoona Regional Health Systems,* (In re Wingard), 382 B.R. 892, 900 n. 6 (Bankr.W.D.Pa.2008).

### 1. Ettinger Violated the Automatic Stay.

■ As noted in the discussion of the Factual Background above, I find that Et-

tinger dispatched the four invoices from May—August 2010 to Debtors. As I mentioned, this is not free of doubt, because of certain anomalies that exist. But given my disregard for Mr. Ettinger's testimony, Mr. Miller's testimony that he and has wife received the invoices in the mail from Ettinger fulfills the standard of proving that Debtors' position is more probable than not.[10] Ettinger's act of sending the invoices violated Section 362(a)(6), which stays any act to collect, assess, or recover a claim against Debtors that arose before the commencement of this case. 11 U.S.C. § 362(a)(6). Debtors successfully established that Ettinger violated the automatic stay, the first element required for the Sanctions Motion to be granted.

### 2. Ettinger's Violation of the Automatic Stay Was Willful.

■ The second element—willfulness— can be satisfied by showing simply that the offending party knew about a debtor's bankruptcy but proceeded with the stay violation nonetheless. *See In re Keppel,* No. 09–22293 (Bankr.E.D.Pa. November 13, 2009); and *In re Douglas Young Builder, Inc.,* Case No. 09–21940, 2009 WL 2827959 (Bankr.E.D.Pa. September 1, 2009), both of which cite extensively and rely on In re Mu'min, 374 B.R. 149 (Bankr. E.D.Pa.2007). See also *In re Mikulski,* No. 10–21594, slip op. (Bankr.E.D.Pa. August 18, 2010) (oral opinion read in open Court). In re Wingard, 382 at 901–02, is also in accord (use of the defense that the "computer did it" is not acceptable). The office of Debtors' counsel informed Ettinger about this bankruptcy immediately upon filing this case. Debtors successfully established that Ettinger knew about their bankruptcy, the second element required for the Sanctions Motion to be granted.

---

**10.** I agree with the Court in *Wingard,* 382 B.R. at 900 n. 6, which reviewed both the clear and convincing evidence and the pre-

ponderance of evidence burdens, in concluding that the latter should be used in sanction hearings for violations of the automatic stay.

### 3. Ettinger's Violation of the Automatic Stay Caused No Injury to Debtors.

Upon receiving the first three invoices, Debtors tossed them aside to a pile of other papers for future forwarding to their counsel. No fear; no apprehension; no anxiety; no nausea; no concerns; no monetary distress; no emotional distress; no harm. Only because they perceived an issue about a possible increase in Ettinger's legal claim arising from the continually accruing interest shown in the August invoice did Debtors refer the matter to their lawyer—who did nothing. No telephone call to Ettinger; no letter to Ettinger; no email to Ettinger; no fax to Ettinger; no communication at all to or with Ettinger. Mr. Miller provided no testimony whatsoever about any injury that he or his wife suffered as a result of the invoices. Furthermore, Debtors' counsel had no reason to take any action because Ettinger ceased mailing the invoices after the August invoice. Debtors suffered no injury.

Debtors' failure to prove some injury arising from Ettinger's willful stay violation is fatal to their Sanctions Motion. Without injury, Debtors are missing the critical third element required for an order of sanctions pursuant to Section 362(k)(1). *Bucchino v. Wells Fargo Bank, N.A. (In re Bucchino)*, 439 B.R. 761, 771 (Bankr. D.N.M.2010) (without injury, debtors both lack standing *and* are missing a critical element necessary to seek sanctions); *In re Prusan*, No. 09–49716–CEC, 2010 WL 813778, at *3 & *4 (Bankr.E.D.N.Y. March 2, 2010) (no injury to debtor and no need for debtor's counsel to do anything meant that debtor's request for sanctions must be denied).

### B. Debtors Failed To Establish Actual Damages, Including Costs and Attorneys' Fees.

Although Debtors failed to prove any injury resulted from Ettinger's conduct, which eliminates any recovery of sanctions, a second reason leads me to the same result. Even if Debtors had alleged and proved some modest, even non-compensable, injury, I would deny the Sanctions Motion because Debtors failed to prove any actual damages, including reasonable and necessary attorneys' fees.

### 1. Actual Damages

As discussed above, Debtors suffered no actual damages, whether emotional, physical, monetary, or otherwise.

### 2. Attorneys' Fees

Many courts have held that simply incurring attorneys' fees without other actual damages is possible in a sanctions context. *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 471–72 (Bankr.N.D.Ohio, 2010) (including the cases that the Ohio court analyzes). I agree. See also, Judge Lief Clark's decision in *Eastman v. Baker Recovery Services (In re Eastman)*, Case No. 05–57404–C, Adv. No. 08–5055–C, 2010 WL 5462469, at *2–3 (Bankr.W.D.Tex., December 29, 2010),[11] in which the court ruled that attorneys' fees can be awarded for violation of the discharge injunction,[12] even if the debtor suffered no other actual damages.

For Debtors to recover attorneys' fees, however, such fees must be reasonable and necessary. I agree with and adopt the analysis on this issue set

---

**11.** Judge Clark denied Defendants' motion for reconsideration on February 1, 2011, in *Eastman v. Baker Recovery Services (In re Eastman)*, Case No. 05–57404–C, Adv. No. 08–

5055–C, 2011 WL 346040 (Bankr.W.D.Tex., February 1, 2011).

**12.** Section 524(a) of the Bankruptcy Code, 11 U.S.C. § 524(a), operates as an injunction

forth in *Prusan*, which I will quote at some length:

> Moreover, this Court cannot award the reimbursement of attorneys' fees and costs under these circumstances. While attorneys' fees and costs are recoverable under § 362(k), the fees and costs must be reasonable and necessary. *In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D.N.Y.1998). "The policy of section 362[k], to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a 'cottage industry' built around satellite fee litigation." *Id.* (citing *Putnam v. Rymes Heating Oils, Inc. (In re Putnam)*, 167 B.R. 737, 741 (Bankr.D.N.H.1994)). It is well established that "[r]easonable and necessary fees do not include unnecessary litigation costs." *Id.*; See also *Yarinsky v. Saratoga Springs Plastic Surgery, PC (In re Saratoga Springs Plastic Surgery, PC)*, No. 1:03CV896, 2005 WL 357207, at *54 (N.D.N.Y. February 11, 2005), aff'd, 172 Fed.Appx. 339 (2d Cir. 2006) ("[A]n 'excessively litigious approach' to violations of the automatic stay that do not cause damages in an[d] of themselves must be guarded against.").

*Prusan*, 2010 WL 813778 at *3 (footnotes omitted). See also *In re Beebe*, 435 B.R. 95, 101–02 (Bankr.N.D.N.Y.2010).

█ Ettinger ceased its violation of the automatic stay when it unilaterally, without being asked or told to do so by Debtors or their counsel, no longer sent billing invoices to Debtors. Debtors had no need to do anything. Nevertheless, five months later, Debtors initiated this dispute with the filing of the Sanctions Motion. Debtors were litigating something that did not need litigating. No attorneys' fees were necessary; no attorneys' fees are reasonable.

## V. CONCLUSION

As discussed in the preceding findings of fact, conclusions of law, and discussion, Debtors failed to establish a critical element of Section 362(k)(1)—that they suffered some injury from the violation of the stay. Furthermore, I have determined that, setting aside the prerequisite of establishing injury, Debtors failed to establish that they had suffered actual damages in any way and failed to establish that the attorneys' fees they sought were either reasonable or necessary. *De minimis non curat lex.*

I therefore reject Debtors' Sanctions Motion. I will issue an Order of even date herewith denying the Debtors' Sanction Motion, based upon the findings of fact, conclusions of law, and discussion set forth above.

against any actions to collect a debt discharged in a bankruptcy case.